FLEMING v. COOPER.

5-790                                          284 S. W. 2d 857

Opinion delivered December 5, 1955.

[Rehearing denied January 9, 1956.]

*Jeff Duty* and *Claude Duty,* for appellant.

*Lovell & Evans,* for appellee.

J. SEABORN HOLT, Associate Justice. Francis W. Fleming, appellant, is the wife of Joe W. Fleming and has, for the past 15 years, owned a small farm in Washington County. Appellee Cooper in 1939, under an oral lease agreement with Joe W. Fleming, became Fleming's tenant from year to year on a fifty-fifty basis and so continued until January 22, 1952, when he left the premises to avoid eviction by the Sheriff. On August 4, 1952, Cooper sued Joe W. Fleming, as the owner of the leased premises (In Case 12872), for his share of the profits alleged due under his lease. Fleming answered, admitting that Cooper was his tenant, and in a cross-complaint alleged, in effect, that under the tenancy agreement, Cooper owed him a substantial amount for expenses incurred in 1949, 1950 and 1951. Cooper filed a reply and also a cross-complaint. Upon trial the court, on September 30, 1953, rendered a decree in favor of Cooper. On appeal here that decree was affirmed. Reference is made to that opinion—*Fleming* v. *Cooper,* 224 Ark. 10, 271 S. W. 2d 772, for the complete decree which appears embodied therein.

Pending execution on the mandate from this court in the above decree, appellant, wife of Joe W. Fleming, on November 12, 1954, filed the present suit alleging, in effect, that Cooper became her tenant in October, 1939, on the same land involved in the first suit above (12872)

and continued as her tenant until the close of 1951: that during 1951 and 1952 she spent substantial sums of money on the land, that her husband, Joe W. Fleming, was her manager and that Cooper had orally agreed to pay her the money she had expended; that in November, 1951, she and Cooper became involved in a disagreement or controversy as to the correct amounts owed to each party, and as to further occupancy of the real estate, and that she had served notice on him to vacate; that on January 15, 1952, Cooper, through his attorney, proposed an accord and satisfaction based on two letters attached to her complaint, and that she agreed to his proposal. She sought to enforce this accord and satisfaction agreement. She further alleged that Cooper had a judgment against her husband, Joe W. Fleming, in the amount of $828.80, proceeds from the 1952 crop on the above land, which she alleged to be her property, and further prayed for judgment for this amount. Her husband, as garnishee, answered that he had paid this money to his wife, Francis W. Fleming, November 18, 1954, and asked to be discharged. Joe W. Fleming on December 6, 1954, paid into the registry of the court $917.43 which amount he had paid to his wife on November 18, 1954. A demurrer to Francis W. Fleming's complaint was overruled and on February 5, 1955, Cooper filed a combined motion to dismiss and an answer. His answer was a general denial and he specifically pleaded that Francis W. Fleming was barred, in the present suit, by the statute of limitations, and by the former suit (12872) on the ground of *res judicata* and estoppel.

On a trial the court, February 26, 1955, sustained Cooper's plea of *res judicata* and estoppel, dismissed appellant's complaint for want of equity, and awarded Cooper $941.10 plus interest and costs. From that decree is this appeal.

Appellant relies on two points: "I. The court erred in sustaining the motion to dismiss filed by the appellee in that the defense of *res judicata* and estoppel does not apply under the facts in this case and was not established by the appellee. II. The appellee did not discharge the

burden of proof necessary to establish the defense of *res judicata* and estoppel.'' In the decree of February 26, 1955, the trial court found in part—''. . . the examination and study I have made of the instant case and prior case No. 12872 convinces me in truth and in fact that the two cases were identical in that the plaintiff (appellant) having set up and pleaded a contract, proceeds to plead and set up in almost precisely the same language, the earlier accounts of debit and credit and the same basis for debit and credit and the same prayer for relief as was embodied in the complaint in the first suit; . . . It is my belief that the pleader in this case had asked for the specific relief that the plaintiff in the former complaint had asked for in his prayer of relief and that the relief in both cases was based on the same set of facts; that there was the same previously pleaded owner-tenant farm arrangement; that the court does not pass on whether or not the newly alleged contract was a proper contract but it is clear to me that the two cases are the same; that the first case was tried in my court and appealed to the Supreme Court and decided by the Supreme Court; that *res judicata* is simply the basic proposition of estoppel; . . . It is, therefore, on particular facts involved in the case concerned, its pleadings and the particular circumstances existing, that sometimes a wife may be collaterally estopped by reason of her husband's act or acts as in the instant suit by reason of the relationship of husband and wife where the wife has knowledge of such acts. . . . **She knew** about the other suit because she stated in the notice to vacate '' 'You are hereby notified to quit and vacate *our* property' and that such notice was signed by Joe W. and Francis W. Fleming, owners.

''In the original suit I do not recall that it was alleged or admitted in specific terms that Joe W. Fleming was the owner of the land but it is certainly clear to me from the pleadings and the testimony all the way through that Joe Fleming asserted himself to be the owner; that in this action the plaintiff says: 'I am the owner and Joe Fleming was my manager, under my immediate supervision, and that certain things were done.' The plain-

tiff *then* knowledgeably acquiesced in her husband's assertion of rights on his own account, and now she seeks to assert those same rights on her own account relegating her husband to the role of farm manager, or owner's agent. I think it boils down to the fact that the Flemings were husband and wife. In the second suit in which Francis Fleming is plaintiff, she is trying the second time to cover the same ground that her husband covered in the original suit."

We agree that the preponderance of the evidence supports the above findings. These two cases covered the same subject-matter, the same evidence, and involve, in effect, the same issues sought to be raised in the present suit. The only difference is that Francis W. Fleming, the wife of Joe W. Fleming, was not made a party in the first suit. We are convinced, however, that in that first suit her husband with her knowledge and consent and within the scope of his authority was acting as her agent and manager; that all the while she stood idly by with full knowledge of what was going on, the pendency and progress of the suit, and the final result thereof. In fact, appellant seems to concede that her husband was her agent until the alleged contract of January 19 (based on the letters). She says: "In this case, the appellant alleged that Joe W. Fleming was her agent during the rental of the farm and in the negotiation of the contract with the appellee, but nowhere does she allege that he was her agent after the contract of January 19th was entered into." It appears conclusive that she must have known about the suit because she and her husband had the following Notice to Vacate served on Cooper.

"TO ELLIS COOPER, Route 2, Springdale, Arkansas.

"You are hereby notified to quit and vacate our property, more particularly described as follows: [describing it]. You are to vacate said property within ten (10) days after the service of this notice upon you. Witness our hands this 9th day of January, 1952.

/s/ Joe Fleming
/s/ Francis Whitlow Fleming, Owners."

In this notice it will be observed that they both claim to be owners of the property involved. It further appears that Francis W. Fleming, following the above notice, called the court reporter several times inquiring about the progress of the suit, and in the circumstances, we hold that she was in privity with him and being his wife was equally bound and concluded by the first suit above. The general and applicable rule is stated in 50 C. J. S., Page 342, § 798 (Judgments). "There is no legal privity between a husband and wife in such a sense that a judgment for or against the one will conclude the other, where the action concerns their separate property, rights, or interests not derived from each other. . . .

"Under some circumstances, however, a judgment against one spouse is binding on the other spouse. A wife will be concluded by a judgment in an action for or against her husband with respect to any right or interest which she claims through or under him; and so likewise will a husband be concluded by a judgment for or against the wife in respect of a right or interest which he claims through or under her. Also either spouse may be concluded where he or she was joined as a party with the other and such joinder was not improper, or where, although not a formal or nominal party, he or she was the real party in interest, or sanctioned the suit, or assumed a right to control or actively to participate in the trial or its management. Where the husband acts as agent for the wife, not only in the litigation but in the transaction out of which it arises, she is bound by the judgment where the litigation is conducted in his name, or originally in the names of both of them and, on appeal, in his name alone, and he is bound, where the litigation is in her name."

In a somewhat similar situation, in effect, this court in *Collum* v. *Hervey*, 176 Ark. 714, 3 S. W. 2d 993, reversed the lower court's judgment in which it had refused the plea of *res judicata* offered by defendant. The plea of *res judicata* seemed to be based upon a chancery decree involving title to real estate in which action the wife had not been made a party. We there said: "It is

the opinion of the majority of the judges, that Senie Hervey being the wife of Isom Hervey, living with him at the time, she was represented by the husband in the suit, was in privity with him, and equally concluded by the proceedings.

"A judgment in favor of or against the husband in an action involving a debt due the community will bind the wife regardless of her nonjoinder. . . . And even in jurisdictions where both husband and wife are necessary parties in actions affecting community real property, a judgment either for or against the husband in an action to which the wife is not a party is not necessarily void on collateral attack; where the action was brought by the husband alone, the judgment is binding on the wife, unless she avoids it by showing that it was commenced and prosecuted without her knowledge or consent. 31 C. J. 160." See also *Haffke* v. *Hempstead Co. Bank & Trust Co.,* 165 Ark. 158, 263 S. W. 395.

In the circumstances Cooper's plea of *res adjudicata* against the present suit is well founded and must be sustained. In our recent case of *Missouri Pacific Railroad Company, Thompson Trustee,* v. *McGuire,* 205 Ark. 658, 169 S. W. 2d 872, we said: "As stated in 30 Am. Jur. 908: 'Briefly stated, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.'

"And in 30 Am. Jur. 957, in discussing who are privies within the rule of *res judicata,* it is stated: 'In general, it may be said that such privity involves a person so identified in interest with another that he represents the same legal right. It has been declared that privity within the meaning of the doctrine of *res judicata* is privity as it exists in relation to the subject-matter of the litigation, and that the rule is to be construed strictly to mean parties claiming under the same title.'"

Appellant's earnest contention that the present suit was based, in effect, upon a written contract evidenced by the two letters above referred to from Cooper's attorney to Joe W. Fleming, is, we hold, without merit. The first letter (January 15, 1952) was as follows: "Dear Joe: Ellis Cooper has brought to me this Notice to Vacate you had served on him. Ellis has consulted me for some time about your difficulties.

"You realize, of course, the same as I do that where a man is renting on a year to year basis, to give him a valid legal notice you have to give him a six months notice directed towards the end of the term, so legally to have required Mr. Cooper to vacate on January 1, 1952, notice would have had to have been given on or before July 1, 1951.

"But that is neither here nor there. You want your place and Ellis wants to give you the place. He has been talking to me about several of the things for which you owe him; the repairs on the pump and the sprayer, the tractor, and putting in the fall cover crop after harvesting the grapes, and I have long since learned that every difference has two sides so I am quite sure you have things that you feel he owes you for.

"Let's do this. You give him a receipt in full setting up that he doesn't owe you any further; that every debt he owes you is paid in full and then I will have him give you a similar receipt in full; then when that is done he tells me that he can move off the place probably within the time you have specified and certainly by February 1."

The second letter (January 19, 1952) as follows: "Dear Joe: Ellis was in this afternoon, and I went over with him in detail our conversation of Thursday. He asks me to advise you that he will have the premises vacated entirely by 6:00 p.m., Tuesday, Jan. 22nd, 1952."

These letters evidently were efforts on the part of Cooper's attorney to adjust Cooper's controversy with the Flemings without a lawsuit and contemplated further negotiations. No meeting of the minds necessary to a contract can be gleaned from them. The most that resulted was that after Mr. Lovell imparted to his client,

Cooper, the conversation that he, Lovell, had had with Joe W. Fleming, Cooper vacated the property on January 22, 1952, without settling their differences. We think it is clear that no accord and satisfaction was had here. "A discharge of claims by way of accord and satisfaction is dependent upon a contract, express or implied; and it follows that the essentials necessary to valid contracts generally must be present in a contract of accord and satisfaction. Therefore, the following elements are essential: (1) A proper subject-matter, (2) competent parties, (3) an assent or meeting of the minds of the parties, and (4) a consideration." 1 Am. Jur., § 5, page 217.

We think that in addition to the absence of meeting of the minds, necessary to support an accord and satisfaction, there were also lacking competent parties. Finding no error the decree is affirmed.

Justice SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. It does not seem to me that the appellee's plea of res judicata has been established by a preponderance of the evidence. To sustain his burden of proof the appellee has merely shown that Mrs. Fleming took two steps that were in some way connected with the suit against her husband. First, she joined her husband in giving Cooper notice to vacate the premises. But Cooper voluntarily surrendered possession; so the notice accomplished its purpose and passed out of the picture. The subsequent suit was not brought by Fleming as landlord, pursuant to the notice; on the contrary, it was brought by the tenant and involved an accounting rather than the issue of possession. Consequently it cannot fairly be inferred from the mere giving of the notice to vacate that Mrs. Fleming even knew of the suit later brought against her husband, much less that she controlled or participated in that suit.

Second, it is shown that after the prior case had been completed in the trial court Mrs. Fleming telephoned the court reporter to inquire about the progress being made in preparing the record for appeal. This doubtless proves

that Mrs. Fleming knew that a lawsuit between her husband and Cooper had been tried and was to be appealed, but again there is no basis for an inference that she either controlled the litigation or participated in it.

Admittedly Mrs. Fleming was not a party to the former suit, nor was she in privity with her husband in the sense of having succeeded to his interest in the subject matter of the litigation. Hence she ought not to be bound by the prior decree in the absence of proof that she controlled that litigation or participated in it to such an extent as to raise an estoppel. Rest., Judgments, § 84; *Hill* v. *Village Creek Dr. Dist.*, 215 Ark. 1, 219 S. W. 2d 635. In my opinion the appellee has not met the burden of making that proof.

When we lay aside Mrs. Fleming's two inconsequential points of contact with the earlier suit, all that remains is the proof that her husband claimed ownership of the land in the first suit and that she now claims ownership in an effort to relitigate the same issues. In a similar situation, in which the wife asserted ownership after her husband had already lost a case that had been appealed to this court, we held that the wife's complaint stated a cause of action. *Dodson* v. *Abercrombie*, 218 Ark. 50, 234 S. W. 2d 30. It seems to me that the *Dodson* case should control our decision in the case at bar.